THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ANTHONY F. WALTON, Defendant-Appellant.

Fourth District   No. 4—89—0875

Opinion filed June 29, 1990.

Daniel D. Yuhas and Judith L. Libby, both of State Appellate Defender's Office, of Springfield, for appellant.

Tony Lee, State's Attorney, of Paxton (Kenneth R. Boyle, Robert J. Biderman, and David E. Mannchen, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

Defendant, Anthony Walton, was found guilty of burglary (Ill. Rev. Stat. 1989, ch. 38, par. 19—1(a)) after a jury trial and sentenced to five years' imprisonment. On appeal, defendant argues that (1) the trial court should have suppressed his confession, and (2) the prosecutor's closing argument denied him a fair trial.

At the hearing on the motion to suppress defendant's confession, police officer Jeff Bond testified that he gave defendant the *Miranda* warnings. Specifically, Bond stated the following:

> "[Defense Counsel] Q. You recall how you gave him those Miranda warnings?
>
> A. I just gave him [*sic*] to him conversationally.
>
> Q. Did you read them off a card or anything of that nature?
>
> A. No I did not.
>
> Q. Did you advise him he had a right to remain silent?
>
> A. Yes.
>
> Q. Anything he might say could be used against him in court?

A. Yes I did.

Q. Informed he had a right to consult with a lawyer?

A. Yes I did.

Q. Had a right to have a lawyer with him during the interrogation?

A. I don't know if I said that.

Q. And that if he is indigent or poor that he would be provided with a lawyer if he so desired?

A. Yes."

The trial court denied the motion to suppress.

At trial, Bond testified that he "probably" advised defendant of his right to have an attorney present during the interrogation, but he could not be sure. Defendant testified that Bond never advised him of his *Miranda* rights.

At the hearing on defendant's post-trial motion, the trial court explained its earlier denial of defendant's motion to suppress and noted that there are four required admonitions under *Miranda*: (1) the right to remain silent; (2) the fact that one's statements may be used against him; (3) the right to an attorney; and (4) the right to have an attorney appointed, if indigent. The trial court found that Bond properly informed defendant of these rights. The trial court further found that Bond's use of the word "probably" referred only to whether Officer Bond used the precise language defense counsel asked him about.

Defendant contends that the State failed to prove that Bond advised defendant of his right to have an attorney *present* before and during interrogation and that this rendered defendant's confession inadmissible.

■ When a defendant claims through a motion to suppress that his *Miranda* rights have been violated, a trial court's decision denying that motion will be overturned only when the decision is contrary to the manifest weight of the evidence. *People v. Kokoraleis* (1987), 154 Ill. App. 3d 519, 526, 507 N.E.2d 146, 150.

■ Prior to custodial interrogation, the police must inform a defendant of the following:

"[H]e has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Miranda v. Arizona* (1966), 384 U.S. 436, 444, 16 L. Ed. 2d 694, 706-07, 86 S. Ct. 1602, 1612.

See also *People v. Denham* (1968), 41 Ill. 2d 1, 4, 241 N.E.2d 415, 417; *People v. Bailey* (1987), 164 Ill. App. 3d 555, 571, 517 N.E.2d 570, 580-81.

The most recent discussion by the United States Supreme Court regarding the *Miranda* warnings appears in *Duckworth v. Eagan* (1989), 492 U.S. 195, 106 L. Ed. 2d 166, 109 S. Ct. 2875. In *Duckworth*, the defendant received the standard *Miranda* warnings, but was also told by the police that, "We have no way of giving you a lawyer, but one will be appointed for you, if you wish, if and when you go to court." (*Duckworth*, 492 U.S. at 198, 106 L. Ed. 2d at 174, 109 S. Ct. at 2877.) The defendant then confessed to a murder, but later filed a motion to suppress his confession, arguing that the warnings he received did not comply with *Miranda* because of the "if and when you go to court" language. (*Duckworth*, 492 U.S. at 200, 106 L. Ed. 2d at 175, 109 S. Ct. at 2877-78.) His motion was denied, and the issue was litigated first through the Indiana courts and then through the Federal courts on a petition for writ of *habeas corpus*, with the issue ultimately to be resolved by the United States Supreme Court. That Court stated the following:

"We have never insisted that *Miranda* warnings be given in the exact form described in that decision. *** In *California v. Prysock*, [citation], we stated that 'the "rigidity" of *Miranda* [does not] exten[d] to the precise formulation of the warnings given a criminal defendant,' and that 'no talismanic incantation [is] required to satisfy its strictures.' [Citation.]

*** The prophylactic *Miranda* warnings are 'not themselves rights protected by the Constitution but [are] instead measures to insure that the right against compulsory self-incrimination [is] protected.' [Citation.] Reviewing courts therefore need not examine *Miranda* warnings as if construing a will or defining the terms of an easement. The inquiry is simply whether the warnings reasonably 'conve[y] to [a suspect] his rights as required by *Miranda*.' " *Duckworth*, 492 U.S. at 202-03, 106 L. Ed. 2d at 176-77, 109 S. Ct. at 2879-80.

Judged by these standards, we find that the *Miranda* warnings given to defendant in this case, in their totality, were sufficient in that they "reasonably conveyed" to defendant his rights as required by *Miranda*. In so holding, we note that defendant was specifically informed that he "had a right to consult with a lawyer." While the better practice would be for the police to make explicit that defendant's right to consult with a lawyer may be both before and during any police interrogation, we hold that the language used in this case was sufficient to *imply* the right to counsel's presence during questioning. We note that, as opposed to *Duckworth*, no restrictions were stated by the police in the present case as to *how, when,* or *where* defendant

might exercise his right "to consult with a lawyer."

We conclude that to hold otherwise would be to import a rigidity to the *Miranda* warnings and to require a "talismanic incantation," both of which actions have been explicitly disapproved by the Court. As stated in *Kokoraleis*, "The warnings given to a defendant need not follow a ritualistic formula [citation], but must convey the concept that the defendant can have an attorney present if he so desires [citation]." (*Kokoraleis*, 154 Ill. App. 3d at 526, 507 N.E.2d at 150.) The warnings given in the present case comply with that standard, and the trial court's denial of the motion to suppress the confession is not contrary to the manifest weight of the evidence.

We note further that the present case is hardly one in which the defendant is claiming he was confused and misled by the *Miranda* warnings he was given. Instead, defendant denied he was given *any* of the *Miranda* warnings, a claim the trial court found unworthy of belief.

Defendant next argues that certain statements made in the prosecutor's closing argument denied him a fair trial. Described in general terms, defendant contends that the prosecutor improperly focused on defendant's personal traits, commented unfavorably on defendant's use of his constitutional rights, bolstered the credibility of the testimony of the police, injected his personal belief of defendant's guilt, shifted the burden of proof from the State to the defendant, stated that believing the defendant was tantamount to declaring that the police were wasting their time, and implored the jury to send a message to defendant and those similarly situated that those who commit crimes will pay the price.

■ While we do not agree with all (or even most) of defendant's characterizations of the prosecutor's closing argument, we need not analyze further each of the allegedly improper comments because defendant failed to object at trial to the prosecutor's remarks. Accordingly, unless the prosecutor's remarks constitute plain error, defendant has waived consideration of this issue on appeal. *People v. Hall* (1986), 114 Ill. 2d 376, 418, 499 N.E.2d 1335, 1353, *cert. denied* (1987), 480 U.S. 951, 94 L. Ed. 2d 802, 107 S. Ct. 1618.

■ ■ Once again, this court is presented with a claim by defendant's counsel on appeal that the prosecutor's closing argument was egregiously improper, yet defendant's counsel at trial (who the record shows presented a strong defense by vigorously cross-examining the State's witnesses, calling witnesses for the defense, and filing several pre-trial motions seeking to restrict the presentation of incriminating evidence) *made not one objection* to any of that allegedly improper ar-

gument. We are of the opinion that the constraints of the plain error rule should be strictly applied under such circumstances. To hold otherwise would be to place a tactical benefit on defense counsel's silence during an allegedly improper closing argument because counsel would know that the courts of review would consider the issue despite no objections being made. In our view, improper closing arguments (if objected to) are among the easiest of errors for the trial courts to correct.

This very case is a perfect example of the wisdom of the policy requiring timely objections. A supplemental post-trial motion was filed that alleged misconduct during the prosecutor's closing argument when the prosecutor argued that the jury in its verdict should "send a message" by its verdict. In denying that motion, the trial judge stated the following:

> "[T]here were a couple of occasions in the closing argument when the State's Attorney said not just send a message to this defendant, but send a message to them out there and that is error. Had there been an objection at the time, I would have sustained the objection and told the jury to disregard that argument and explain[ed] to them that their business is finders of facts in this case, not sending messages to anyone."

In *People v. Herrett* (1990), 137 Ill. 2d 195, the Illinois Supreme Court recently reviewed the criteria reviewing courts should employ when deciding whether alleged plain errors, affecting substantial rights, may be noticed on appeal under Supreme Court Rule 615(a) (107 Ill. 2d R. 615(a)). The court wrote the following:

> "The plain error rule permits a reviewing court to consider a trial error not properly preserved for review in two circumstances. First, where the evidence in a criminal case is closely balanced, a reviewing court may consider a claimed error not properly preserved so as to preclude argument of the possibility that an innocent man may have been wrongly convicted. * * *
> * * *
> The plain error rule also may be invoked where the error is so fundamental and of such magnitude that the accused was denied a fair trial." *Herrett*, 137 Ill. 2d at 209-10.

Applying the aforesaid criteria to the present case, we find that defendant's claims fall far short. Here, the evidence was not closely balanced. Further, we find that none of the allegedly improper statements by the prosecutor during his closing argument even came close to the level of "error * * * of such magnitude that the accused was denied a fair trial." *Herrett*, 137 Ill. 2d at 210.

■ The last issue defendant raises is that he did not receive sufficient credit on his sentence for all time served on this charge. The sentencing order states that defendant is to receive credit for time served from June 1, 1989. However, defendant was arrested on May 23, 1989. The record contains no explanation as to why defendant received no credit for time spent in custody (if any) from May 23 to June 1. The State concedes that the case should be remanded for a determination of credit for time served, and we agree.

This remand for clarification of the sentence credit to which defendant is entitled is yet another indication of the need for the trial courts to follow the procedures at sentencing hearings that this court outlined in *People v. Durk* (1990), 195 Ill. App. 3d 335, 552 N.E.2d 278. In *Durk*, this court said the following:

> "To avoid problems such as have arisen here [uncertainty as to credit for time served], the better practice is for the trial court, immediately after pronouncing a sentence to the Department of Corrections, to raise the issue of how much credit the defendant is due for time previously served." *Durk*, 195 Ill. App. 3d at 339, 552 N.E.2d at 281.

Affirmed and remanded with directions.

KNECHT, P.J., and McCULLOUGH, J., concur.